UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURIE G..,

                                         Plaintiff,

v.                                                        8:19-CV-208(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.
_____

APPEARANCES:                         OF COUNSEL:

SCHNEIDER & PALCSIK           MARK A. SCHNEIDER, ESQ.
for Plaintiff
57 Court Street
Plattsburgh, NY 12901

HON. GRANT JAQUITH            SIXTINA FERNANDEZ, ESQ.
United States Attorney              Special Assistant
for Defendant
100 S. Clinton St.
PO Box 7198
Syracuse, NY 13261-7198

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>ORDER</u>

       Presently before the Court in this action, in which Plaintiff seeks judicial review of an

adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are

cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with

those motions on July 31, 2020, during a telephone conference at which a court reporter was

---

     [1]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

present.  At the close of argument I issued a bench decision in which, after applying the requisite

deferential review standard, I found the Commissioner's determination resulted from the application

of proper legal principles and was supported by substantial evidence, and I provided further detail

regarding my reasoning and addressing the specific issues raised by the Plaintiff in her appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been

transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is

hereby,

**ORDERED**, as follows:

(1)     Defendant's motion for judgment on the pleadings is **GRANTED**;

(2)     The Commissioner's determination that Plaintiff was not disabled at the relevant
        times, and thus is not entitled to benefits under the Social Security Act, is
        **AFFIRMED**; and

(3)     The Clerk is directed to enter judgment, based upon this determination, dismissing
        Plaintiff's complaint in its entirety.

SO ORDERED.


Dated: August 7, 2020
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
LAURIE G.,
                                    Plaintiff,

-v-                                 19-CV-208

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
----------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE THÉRÈSE WILEY DANCKS**
July 31, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    SCHNEIDER & PALCSIK
    57 Court Street
    Plattsburgh, New York 12901
    BY:  **MARK A. SCHNEIDER, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY:  **SIXTINA FERNANDEZ, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

```
 1            (The Court and all counsel present by telephone.
 2   Time noted:  11:28 a.m.)
 3            THE COURT:  So I have before me a request for
 4   judicial review of an adverse determination by the Acting
 5   Commissioner under 42, United States Code, Section 405(g).
 6            The background is as follows:  Plaintiff was born in
 7   April of 1975 and is currently 45 years old.  She was 40 years
 8   old at the onset of her alleged disability.  She has a high
 9   school IEP diploma.  She has not engaged in substantial gainful
10   activity since the alleged onset date.  She previously worked as
11   a certified nurse's aide.  In her application for benefits, she
12   indicated she suffers from degenerative disc disease, a pinched
13   nerve in the left hip, and severe depression.
14            Procedurally, plaintiff filed for Title XVI
15   Supplemental Security Income benefits on February 29, 2016,
16   alleging disability beginning that same date.  A hearing was
17   conducted by Administrative Law Judge Asad Ba-Yunus on April 25,
18   2018, wherein the plaintiff testified, as did a vocational
19   expert.  A previous hearing before a different ALJ related to an
20   earlier claim was held on July 24, 2013.  Plaintiff was
21   represented by an attorney at the hearing in this claim and
22   through the Appeals Council process in this claim.  ALJ Ba-Yunus
23   issued a decision on May 22, 2018, finding that plaintiff was
24   not disabled at the relevant times.  The Social Security
25   Administration made that a final determination of the agency by
```

 1    the Appeals Council's February 7, 2019, denial of plaintiff's

 2    request for review.  This timely District Court action followed.

 3            ALJ Ba-Yunus applied the five-step sequential test

 4    for determining disability.  At step one, he found plaintiff had

 5    not engaged in substantial gainful activity since the onset date

 6    of disability.

 7            At step two, the ALJ concluded plaintiff has the

 8    following severe conditions:  Degenerative disc disease,

 9    degenerative joint disease, morbid obesity, depression, and

10    learning disability.

11            At step three, the ALJ concluded that plaintiff's

12    conditions do not meet or medically equal any of the listed

13    presumptively disabling conditions.  Then, after a review of the

14    record evidence, the ALJ determined plaintiff is capable of

15    performing sedentary work, but with several detailed postural

16    and nonexertional limitations considering her physical and

17    mental abilities.

18            At step four, the ALJ concluded plaintiff could not

19    perform her past relevant work.

20            At step five, the ALJ applied the Medical-Vocational

21    Guidelines, as well as obtained testimony from a vocational

22    expert, and concluded that plaintiff was not disabled.

23            As relevant to the time period in question, plaintiff

24    treated for primary care at the Ticonderoga Health Center.  She

25    was seen there by several providers, including dieticians, care

1   managers, podiatrists, physician assistants, and physicians.

2   She regularly saw a Licensed Clinical Social Worker there,

3   Richard Jack, and mainly treated with Dr. Kathleen Huestis

4   there.  The administrative record also contains treatment notes

5   of Dr. Armin Afsar-Keshmiri of Saratoga Spine, physician

6   assistants and Dr. Douglas Kirkpatrick of North Country Sports

7   Medicine, and Dr. John Adams from Eye Care for the Adirondacks.

8   She was also treated at Saratoga Hospital Pain Management

9   Center, mainly by Dr. Gabriel Radu, and was seen on three dates

10  in April of 2018 at Moses Ludington Hospital, and was also

11  admitted to Champlain Valley Physicians Hospital for one night

12  in April of 2018.  These hospital visits concerned mainly

13  findings of pulmonary emboli.  The administrative record also

14  contains records from Essex County Home Healthcare Coordination

15  Program, which is a support organization, but not a clinical

16  organization.

17          During the relevant time period, diagnostic studies

18  performed include various X-rays of her spine, her left ankle

19  and foot, and her right knee.  She also had various MRIs of her

20  lumbar spine, cervical spine, and right knee.  She also had an

21  EMG and nerve conduction study performed in September of 2015.

22          There's a source statement in the record from

23  treating physician Dr. Huestis of Ticonderoga Health Center

24  dated March 5, 2018.  Other opinions included in the record are

25  from internal medicine consultant Dr. Albert Paolano, who opined

1   on plaintiff's physical limitations, and psychologists Dr.

2   Thomas Osika and Dr. Gina Scarano-Osika, who conducted

3   psychological evaluations.  The agency record reviewer, Dr.

4   Marks, also provided an opinion regarding plaintiff's

5   limitations.

6          I've reviewed the record carefully, and in light of

7   the arguments of counsel and what counsel have presented in

8   their briefs, I've applied the requisite deferential standard,

9   which requires me to determine whether proper legal principles

10  were applied and whether the result is supported by substantial

11  evidence.

12         I'll turn first to the plaintiff's argument that the

13  ALJ erred in evaluating plaintiff's severe conditions, and

14  specifically that the ALJ failed to find plaintiff's low

15  intellectual functioning, right knee impairment, and diabetes as

16  severe conditions at step two.

17         At the second step of the evaluation, the medical

18  severity of a claimant's impairments is considered.  A severe

19  impairment is any impairment or combination of impairments which

20  significantly limits the claimant's physical or mental ability

21  to do basic work activities, meaning the abilities and aptitudes

22  necessary to do most jobs.  These include walking, standing,

23  sitting, lifting, pushing, pulling, reaching, carrying,

24  handling, seeing, hearing, speaking, understanding, carrying

25  out, and remembering simple instructions, use of judgment,

1   responding appropriately to supervision, coworkers, and work

2   situations, and dealing with changes in a routine work setting.

3          The claimant bears the burden of presenting evidence

4   to establish severity and must demonstrate that the impairment

5   has caused functional limitations that preclude her from

6   engaging in any substantial gainful activity for one year or

7   more.  A finding of not severe should be made if the medical

8   evidence establishes only a slight abnormality which would have

9   no more than a minimal affect on an individual's ability to

10  work.

11         Here, the ALJ found plaintiff's learning disability

12  was severe and limited her to unskilled simple routine tasks

13  with only occasional changes in the work setting.  Plaintiff

14  argues her low intellectual functioning should have been found

15  severe based upon her IQ scores and therefore she should have

16  been limited to jobs at the SVP 1 level, not jobs at the SVP 2

17  level that the vocational expert testified she could perform.

18         Plaintiff further argues she should have been limited

19  to only simple rote work with simple work-related decisions

20  because of her limited intellectual functioning.  The Court

21  finds no merit in this argument since plaintiff has not

22  established that she had additional functional limitations

23  resulting from her low intellectual functioning that were not

24  accounted for in the step two finding or in the subsequent

25  residual functional capacity, or RFC, finding.  I note plaintiff

1    did not indicate in her application for benefits or in her

2    testimony that she could not work due to her low intellectual

3    functioning.  Also, plaintiff had task relevant work as a

4    certified nurse's assistant for many years, which the vocational

5    expert testified was a semi-skilled job at the SVP 4 level.

6         The Court also finds that the ALJ did not err in

7    finding her right knee impairments or diabetes were not severe.

8    Plaintiff has not established that either condition functionally

9    limited her more than the RFC for sedentary work.  The treating

10   providers at North Country Sports Medicine who treated her right

11   knee condition did not indicate it caused functional

12   limitations, nor did any other provider or consultant.

13        As for the diabetes, the medical records show, and

14   plaintiff testified, that her diabetes was well controlled with

15   medications.  Podiatry exams showed her lower extremities to be

16   neurologically intact, although she was found to have plantar

17   fasciitis.  Her primary care physician found her to be in the

18   pre-diabetic range throughout much of the relevant time period.

19   The EMG and nerve conduction studies showed that her neuropathy

20   was unlikely to be symptomatic and it was consistent with

21   neuropathy seen in pre-diabetes.  That examiner recommended

22   exercise and good glycemic control to stabilize or reverse the

23   process.  Thus, the medical evidence and other evidence of

24   record establishes only a slight abnormality related to her knee

25   and diabetes, which would have no more than a minimal affect on

1    her ability to work.  I also note that the ALJ proceeded beyond

2    step two to consider plaintiff's limitations and reach an RFC

3    determination such that his determination that her low

4    intellectual functioning, right knee condition, and diabetes

5    were not found severe is not a basis for remand.

6           Next, I turn to plaintiff's arguments that the ALJ

7    erred in his determination of plaintiff's RFC and that the ALJ

8    did not give proper weight to the opinion evidence.

9    Specifically, plaintiff argues that the ALJ erred in evaluating

10   the opinion of treating physician Dr. Huestis.

11          From the outset, I note that clearly the

12   determination of a claimant's disability is a legal

13   determination reserved to the Commissioner.  I've done a

14   thorough and searching review of the record and find that the

15   substance of the treating physician rule was properly followed

16   by the ALJ.  A treating physician's opinion is given controlling

17   weight if it is well supported by medically accepted clinical

18   and laboratory and diagnostic techniques and is not inconsistent

19   with other substantial evidence in the record.

20          When a treating physician's opinion is not given

21   controlling weight, the ALJ is to consider factors such as the

22   length and nature of the treatment relationship, the medical

23   evidence in support of the opinion , the consistency of the

24   opinion with the record as a whole, whether the opinion is from

25   a specialist, and any other factors that tend to support or

1  contradict the opinion.  Each and every factor, however, need

2  not be recited.  The treating physician's opinion need not be

3  afforded controlling weight when the opinion is not consistent

4  with opinions of other medical experts and is contradicted by

5  other substantial evidence of record.

6            Here, I find the ALJ properly assessed the medical

7  and nonmedical evidence of record and the RFC is supported by

8  substantial evidence.  The ALJ thoroughly discussed the medical

9  evidence and other evidence of record, formulated the RFC based

10  upon an assessment of all medical and nonmedical evidence as a

11  whole for the relevant time period, and thoroughly explained his

12  analysis in arriving at the RFC.  The ALJ's decision shows he

13  considered plaintiff's testimony, her adult function report, her

14  activities of daily living, and all treatment records for the

15  relevant period.  He gave significant probative value to the

16  opinions of consulting psychologist Dr. Thomas Osika and

17  non-examining agency psychologist Dr. Marks.  He gave very

18  little weight to the opinion of consulting psychologist Dr. Gina

19  Scarano-Osika because no specific opinion was provided regarding

20  plaintiff's functional abilities.  He gave some weight to the

21  opinion of treating source Dr. Huestis, which was largely

22  consistent with sedentary work, but did not credit the more

23  restrictive postural activities and limiting effects of pain as

24  opined by Dr. Huestis.

25            Plaintiff argues the ALJ's assessment of the opinion

1    of Dr. Huestis was improper because the clinical and

2    radiological evidence supports her opinions since the lumbar

3    MRIs show moderate to severe central canal compromise or

4    stenosis causing mild foraminal narrowing, and the pain

5    management notes from Saratoga Hospital indicate she has chronic

6    low back pain radiating into her left leg.  Plaintiff also

7    argues there is no medical evidence that is inconsistent with

8    Dr. Huestis's opinion.

9              For the following reasons, I find these arguments

10   unpersuasive:  Initially, I note that an ALJ is not required to

11   accept every limitation assessed by an examining consultant or

12   in the opinion of a medical source, nor must the RFC identically

13   track any one of those opinions.  The ALJ has the responsibility

14   of reviewing all of the evidence before him, resolving

15   inconsistencies, and making a determination consistent with the

16   evidence as a whole.  Stated another way, it is the ALJ's

17   responsibility to weigh the various opinions, along with other

18   evidence, and determine which limitations were supported by the

19   overall evidence of record.  The Court cannot reweigh the

20   evidence under the substantial evidence review standard.

21             Here, the ALJ clearly considered all of the opinions

22   and other evidence of record when determining plaintiff's

23   overall RFC, including the mental limitations.  I've done a

24   thorough and searching review of the record and find the ALJ

25   properly assessed the opinions and gave good reasons for the

1   weight given to the opinions.  Regarding the opinion of Dr.

2   Huestis, the ALJ acknowledged the treatment relationship with

3   plaintiff, but noted that the medical records and other

4   evidence, including plaintiff's reported daily activities,

5   showed the limitations opined by Dr. Huestis were not supported.

6   Progress notes, for example, by Dr. Huestis and other providers

7   at Ticonderoga Health Center showed plaintiff had diabetes

8   without complications and a back ache with no specific findings

9   on exam regarding her spinal condition other than some

10  tenderness on palpation.

11          Musculoskeletal exams, if charted at all, showed

12  edema and some tenderness, but were largely unremarkable with

13  negative straight leg raising test results.  Plaintiff

14  complained of pain, but was noted to be ambulating normally.

15  Diabetic foot exams showed normal sensation on the right and

16  left.  Her gait and station were charted as normal.  She had

17  normal muscle tone and was able to transfer to and from a chair

18  without difficulty.

19          A 2017 MRI of the lumbar spine showed no significant

20  foraminal narrowing, although she had a mild disc protrusion at

21  the L5-S1 level.  A cervical MRI in 2014 was normal.  X-rays of

22  her spine showed mild degenerative disc disease and early

23  degenerative joint disease.  An internal medicine consulting

24  exam showed some limited range of motion of the lumbar spine,

25  but no other significant findings.  Records from North Country

 1    Sports Medicine from prior to the relevant time period showed

 2    she had a right meniscus repair of the knee, but instability

 3    tests were negative.  Records from Saratoga Spine showed that

 4    she remained neurologically intact regarding her cervical spine

 5    and upper extremities and plaintiff denied any balance

 6    difficulties or weakness.

 7            Her motor exams of her lower extremities, and later

 8    in all groups, were normal at five out of five.  Straight leg

 9    raising was negative.  She did have an antalgic gait on exam

10    sometimes when seen at the Saratoga Pain Management Center, but

11    in 2017, her gait was consistently non-antalgic and she denied

12    any lower extremity radiculopathy, numbness, tingling, burning,

13    or weakness.  She had good muscle tone and bulk in her spine on

14    exam at the Saratoga Pain Management Center.  She could

15    consistently walk on her toes and in tandem.  Her strength was

16    five out of five in her hip flexors, knee extension, and ankle

17    flexion.

18            Regarding her activities of daily living, plaintiff

19    testified and reported to providers, and in her function report,

20    that she could drive without limitations.  She cared for two

21    children with disabilities.  She did household chores, although

22    they took extra time.  She shopped.  She did dishes and the

23    laundry, although she had to sit when hanging laundry and doing

24    dishes.

25            All in all, I find no error with the ALJ's

1   consideration of Dr. Huestis's opinion and I find that he gave

2   good reasons for the weight attributed to it.  I also find no

3   merit in plaintiff's argument that the ALJ should have contacted

4   Dr. Huestis for more information since the record was complete

5   with no obvious gaps.

6           Regarding plaintiff's obesity, I find the ALJ did

7   properly consider it, in addition to her other impairments, in

8   determining the RFC.  The ALJ noted plaintiff's weight and BMI.

9   He noted that he considered her obesity and assessed her other

10  impairments with regards to plaintiff's obesity and incorporated

11  those findings into the RFC.

12          Here, the records of her treating physicians and

13  examining sources do not indicate that any of those health

14  professionals considered plaintiff's obesity to be a significant

15  factor in plaintiff's ability to perform basic work activities,

16  but the ALJ did still note that it exacerbates her difficulties

17  and determined the RFC accordingly.  The ALJ also considered

18  plaintiff's depression in limiting her to unskilled simple

19  routine tasks with only occasional changes to a routine work

20  setting.

21          Mental status exams throughout the record, including

22  the consulting and reviewing psychological examiners, were

23  largely normal, although she sometimes was found to have a

24  depressed mood with trouble sleeping and low energy.  Still, the

25  records did show that she did receive treatment for depression,

1    including talk therapy and medications, which provided benefits

2    with minimal side effects.  As such, I find no error there or

3    with the RFC as determined by the ALJ.

4            Looking now to plaintiff's complaints of pain and the

5    ALJ's evaluation of symptoms, plaintiff claims the ALJ failed to

6    properly assess her statements.  With regard to the ALJ's

7    determination that plaintiff's testimony regarding her

8    limitations during the relevant time period was not entirely

9    consistent with the medical evidence and other evidence, I find

10   that it is properly explained and it is supported by the record.

11           Here, the record contradicts plaintiff's claims

12   concerning her limitations for the relevant time period.  The

13   ALJ clearly considered plaintiff's complaints and the objective

14   medical records and the various treatment notes.  The treatment

15   notes considered discussed her complaints of pain, the location

16   of her pain, the intensity of it, and the type of medications

17   she was on.

18           Treatment records from her providers showed plaintiff

19   was encouraged to be active and exercise, not that she was

20   considered disabled.  Plaintiff's reports to her providers

21   during the relevant time period and in testimony and in her

22   function report show her various activities of daily living as

23   I've already outlined above.  More specifically, though, she

24   could take care of her personal hygiene, do cooking, shopping,

25   and some laundry.  She spent time with friends and family and

1    went shopping or to the bank or to medical appointments daily.

2    She could finish what she started.  She followed spoken and

3    written instructions and she had no problems getting along with

4    people.  Records show she was gardening, although it did cause

5    her some pain.  Plaintiff also stated to providers that she

6    stopped working because she was terminated due to nonmedical

7    reasons.

8            In short, the record does not support plaintiff's

9    claims that she was unable to do basic work activities and

10   substantial evidence supports the ALJ's evaluation of symptoms.

11           Hold on for one second, please, everybody.

12           All right.  Back on the record.

13           I also find all of the treatment briefly outlined

14   above was, as noted, thoroughly reviewed by the ALJ and the

15   records, including the medical and nonmedical evidence, provide

16   clear and substantial evidence to support the RFC determination

17   such that meaningful judicial review is possible.  In *Cichocki*

18   *v. Astrue*, 729 F.3d 172, the Second Circuit stated that only

19   where the reviewing court is unable to fathom the ALJ's

20   rationale in relation to the evidence in the record would remand

21   be appropriate for further findings or a clearer explanation for

22   the decision.

23           Here, I find the ALJ's analysis regarding plaintiff's

24   functional limitations and restrictions affords an adequate

25   basis for meaningful judicial review, applies the proper

1  standards, and is supported by substantial evidence such that

2  additional analysis would be unnecessary and superfluous.

3          Lastly, the Court reviewed the later permitted

4  submission of plaintiff's counsel and the response from the

5  Commissioner regarding the subsequent decision of ALJ John

6  Farrell dated April 1, 2020, finding that the plaintiff had been

7  disabled since May 23, 2018, the day after the decision at issue

8  here.  I agree with the Commissioner that this subsequent

9  decision is not new and material evidence and it is not part of

10  the record on this appeal.  Standing alone, the subsequent

11  decision is not evidence that can change the outcome of this

12  appeal which must be determined on the record that was before

13  ALJ Ba-Yunus.

14          I also note that a review of the subsequent decision

15  shows that it is based in part upon evidence that was not before

16  the ALJ here, including other consultants's reports and further

17  medical records.  All in all then, I find the ALJ properly

18  weighed the opinions of record for the relevant period, gave

19  good reasons for the weight given to the opinions, and the ALJ

20  properly considered all of the medical evidence and nonmedical

21  evidence of record.  All of this supports the ALJ's

22  determination of plaintiff's RFC, as well as the ALJ's

23  evaluation of symptoms.

24          In short, I find that the ALJ properly explained the

25  reasons for the RFC and for his determinations.  In light of the

1  foregoing and considering the entire record and the ALJ's

2  determination, I find the ALJ applied the appropriate legal

3  standards of review in considering all of the evidence in

4  determining plaintiff's RFC and that the RFC is supported by

5  substantial evidence, so I grant defendant's motion for judgment

6  on the pleadings and will enter a judgment dismissing

7  plaintiff's complaint in this action.  A copy of the transcript

8  of my decision will be attached to the order should any appeal

9  be taken from my determination.

10              (Time noted:  11:52 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5              I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6    NYRCR, Official U.S. Court Reporter, in and for the United
 7    States District Court for the Northern District of New York, DO
 8    HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9    States Code, that the foregoing is a true and correct transcript
10    of the stenographically reported proceedings held in the
11    above-entitled matter and that the transcript page format is in
12    conformance with the regulations of the Judicial Conference of
13    the United States.
14
15              Dated this 5th day of August, 2020.
16
17         X Hannah F. Cavanaugh
18              HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19              Official U.S. Court Reporter
20
21
22
23
24
25
```